## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WILLIAM SNYDER,** through his daughter and attorney-in-fact Lynne Shue, individually and as a class representative, | : : : | |
| Plaintiff, | : | Case No. |
| | : | |
| v. | : | |
| | : | |
| **CONTINENTAL CASUALTY COMPANY**, | : | **CLASS ACTION COMPLAINT WITH JURY DEMAND ENDORSED HEREON** |
| Defendant. | : : : | |

William Snyder ("Plaintiff"), through his daughter and attorney-in-fact Lynne Shue, individually and on behalf of all those similarly situated, brings this action against Defendant Continental Casualty Company ("Defendant" or "CNA" or "Continental") for denying his claim for coverage at a long-term care facility because the facility purportedly did not have a licensed nurse on-site 24 hours per day, 7 days per week ("24/7"). The policies at issue, however, do not require covered facilities to have nurses on site 24/7. In fact, a District Court in Ohio explicit held precisely that fact over 10 years ago based on its interpretation of identical policy language. *See* Exhibit A (*Hoekenga v. Cont'l Cas. Co.*, Case No. 1:06–cv–458 (S.D. Ohio, April 18, 2007) ("The Court agrees that if Continental intended its policy to cover only facilities in which an RN or LPN is physically present onsite 24 hours every day, it was required to plainly state that requirement in its policy.")). Accordingly, Plaintiff brings this class action on behalf of himself and all other

similarly situated policyholders and makes these allegations based upon his personal knowledge as to his own facts and upon information and belief as to all other matters.

## PRELIMINARY STATEMENT

1.      As individuals age, there often comes a time when they can no longer live safely on their own and need to move into a long-term care facility due to physical and/or cognitive limitations.  CNA has sold thousands of long-term care insurance policies in the Commonwealth of Pennsylvania for the purpose of assisting individuals with the cost of such care.

2.      The principal benefit type afforded by CNA's long-term care policies is the Long-Term Care Facility Benefit ("LTCF Benefit").  The LTCF Benefit generally requires CNA to pay a scheduled amount per day – the Long Term Care Daily Benefit Amount ("LTCF Benefit Amount") – for each day the policyholder stays and receives qualifying care at an eligible facility.

3.      CNA's history of attempting to avoid coverage for stays at assisted living facilities under its policies is well documented.

4.      After losing on summary judgment in the *Hoekenga* matter, CNA was faced with a nationwide class action, *Pavlov. v. Continental Casualty Company,* which it settled in 2009.  *See* N.D. Ohio No. 5:07-cv-02580-SL, Doc. 93-2 (August 14, 2009). The issue raised by the *Pavlov* matter was whether the policies required a covered facility to have an on-site nurse 24/7. Notably for purposes of this matter, policy forms issued in Pennsylvania were ***not*** covered by the *Pavlov* class action settlement.

5.      This litigation aims to finally close the loophole that CNA continues to exploit with regard to Pennsylvania issued policies.

6.      Plaintiff Mr. Snyder is the owner of and insured by CNA Long-Term Care Policy No. 076472293 ("Policy"). A copy of the Policy is attached hereto as Exhibit B.

7.      On April 11, 2013 Mr. Snyder moved into a Pennsylvania assisted living facility, Country Meadows of Wyomissing ("Country Meadows") and filed a claim with CNA for the LTCF Benefit under his policy. A registered nurse, or a licensed practical nurse, was on-site at Country Meadows 24-hours-a-day, 7 days-a-week. CNA approved Mr. Snyder's claim and made payments for over 3.5 years (1,284 days).

8.      On October 15, 2016 Mr. Snyder moved to a secure memory care facility at Brightview Perry Hall ("Brightview") in Nottingham, Maryland to be closer to his daughter. To the shock of Mr. Snyder's family, CNA denied his claim for Brightview.

9.      The basis for CNA's denial was simple. In order for a facility to be covered, according to CNA, nurses need to be on-site 24/7, "The available information is that Brightview Perry Hall employs a licensed nurse to provide care and services at the facility only 16 hours per day, and not 24 hours a day. A nurse who is not physically present cannot supervise routine or emergent nursing services that are performed by other individuals." *See* Exhibit C (March 3, 2017 Letter from CNA).

10.     The lack of 24/7 on-site nursing is the sole basis for the denial of Mr. Snyder's claim at Brightview, as his medical eligibility is undisputed: "According to the information we received, you have a qualifying impairment as required by your policy." *See* Exhibit D (October 18, 2016 Letter from CNA).

11.     Accordingly, Plaintiff brings this putative class action on behalf of all Pennsylvania issued policyholders who had their claims for coverage denied on the basis that their facilities purportedly lacked 24/7 on-site licensed nurses.

## **PARTIES**

12.     William Snyder, who still resides in Brightview, was the owner of Long-Term Care Insurance Policy No. 076472293 issued by Defendant, which had an effective date of July 15,

1993. *See* Exhibit B. Mr. Snyder is a citizen of Maryland. After CNA improperly denied his claim as described above, CNA alleges that Mr. Snyder's policy lapsed due to non-payment of premium on October 16, 2016; however, Mr. Snyder's policy only allegedly lapsed because CNA also improperly terminated Mr. Snyder's Waiver of Premium Benefit which allows for a suspension of premium payments when a policyholder is on claim.

13.     Defendant CNA issued the Policy to Mr. Snyder and all similarly situated policyholders.

14.     Defendant is incorporated in Delaware and maintains its principal place of business in Illinois. Defendant is a citizen of Illinois.

## JURISDICTION & VENUE

15.     This Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5,000,000 exclusive of interest and costs and is a class action in which members of the putative Classes are citizens of a State different from the Defendant.  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000 exclusive of interest and cost and Defendant and Plaintiff are citizens of different states.

16.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

## FACTS

### The Policy

17.     On or about July 15, 1993, Mr. Snyder applied for a long-term care insurance policy from CNA.  In response, CNA issued Mr. Snyder Long-Term Care Policy No. 076472293.

4

18.     The Policy's primary benefit is the LTCF Benefit.  The relevant provision of the Policy provides:

> We will pay You the Long-Term Care Daily Benefit Amount, as scheduled in Your policy, for each day of Your Eligible Confinement during a Period of Care which:
> 1. occurs after the Elimination Period, and
> 2. occurs during the Benefit Period.

Exhibit B, p. 11.

19.     "Eligible Confinement" is defined as "Your confinement for Long-Term Care in a Long-Term Care Facility." *Id*. at 6.

20.     "Long-Term Care" is defined as "Care required and provided in a Long-Term Care Facility which is: 1. Medically Necessary; or 2. Due to the Inability to Perform Two or More Activities of Daily Living; or 3. Due to Cognitive Impairment." *Id.*   As noted above, there is no dispute that Mr. Snyder satisfied all medical eligibility requirements for LTCF Benefit coverage at all relevant times.

21.     "Period of Care" is defined as "[a] period in which You receive Long-Term Care, or services provided by a nurse or home health care agency, or services provided under an Alternate Plan of Care, for the same or related condition.  It begins with the first day You receive such care or services for the condition." *Id*. at 8.

22.     To qualify as a "Long-Term Care Facility," ("LTCF") the facility must satisfy certain enumerated criteria.  The most important criterion for purposes of this dispute is the requirement that the facility must have "24-hour-a-day nursing services provided by or under the supervision of a registered nurse (R.N.), licensed vocational nurse (L.V.N.), or licensed practical nurse (L.P.N.)." *Id*. at 8.

23.     The "Waiver of Premium Benefit" provides for a suspension of premium payments when an insured is on claim for an Eligible Confinement. *Id*. at 11.

24.     In summary, the Policy's LTCF Benefit provides that if all medical and facility eligibility criteria are satisfied, Mr. Snyder, and all those similarly situated, are entitled to the "Long-Term Care Daily Benefit Amount" as specified in the Policy Schedule, as well as the Waiver of Premium Benefit. *Id*. at 3, 11.

**Defendant's Improper Denial of Coverage**

25.     On April 11, 2013 Mr. Snyder was admitted to Country Meadows. After a claim investigation, CNA determined that Mr. Snyder required Long Term Care, that Country Meadows satisfied the Policy requirements as an LTCF, and accordingly on July 8, 2013 approved payment of the LTCF Benefit under Mr. Snyder's Policy until October 15, 2016 – the day he moved out of Country Meadows.

26.     On October 15, 2016 Mr. Snyder moved to Brightview in Nottingham, Maryland for its specialized memory care program and to be closer to his family.

27.     On October 18, 2016 CNA denied Mr. Snyder's claim for Brightview since, according to CNA, Brightview "does not meet the policy requirements as a Long Term Care Facility as they do not have 24-hour-a-day nursing services provided by or under the supervision of a registered nurse (R.N.), licensed vocational nurse (L.V.N.), or licensed practical nurse (L.P.N.)." *See* Exhibit D.

28.     On March 3, 2017 CNA clarified that Brightview "employs a licensed nurse to provide care and services at the facility only 16 hours per day, and not 24 hours a day. A nurse who is not physically present cannot supervise routine or emergent nursing services that are performed by other individuals. Thus, nursing services performed in the absence of a nurse who is physically present at the facility do not constitute '*nursing services provided by or under the supervision of*' a nurse, as required by the Policy." (Emphasis in original). *See* Exhibit C.

29.     To be sure, Brightview's on-site nursing director, an R.N., is on call 24/7 when she is not physically present in the facility. The nursing director also has 24/7 supervisory responsibility for the 24-hour-a-day nursing services available at Brightview to its residents, including "custodial nursing care" such as routine assistance with activities of daily living provided by nursing aides. *See* Exhibit B at 8 (an LTCF must provide at least "custodial nursing care[.]"). In addition, a licensed R.N. or L.P.N. is physically on-site 16 hours per day, 7 days a week and nursing aides are on-site 24/7.

30.     CNA's position, that a licensed nurse must be present 24/7 on-site, is precisely the position that the district court in *Hoekenga* rejected when it ruled in favor of Ms. Hoekenga on summary judgment:

> Continental argues that nursing care cannot be provided or supervised if the registered nurse is not physically present… "Supervise" as defined by Webster's II New Riverside University Edition means: "To direct and watch over the work and performance of others." There is nothing in the term that requires a "supervisor" to be physically present at all times in order to "direct and watch over" the work performed by the Sunrise staff. The policy requires that 24-hour nursing services be provided by or under the supervision of a registered nurse… The Court agrees that if Continental intended its policy to cover only facilities in which an RN or LPN is physically present onsite 24 hours every day, it was required to plainly state that requirement in its policy.

*See* Exhibit A (*Hoekenga* Order) at 9-10.

31.     Despite being explicitly told by a federal district court that its interpretation of the "24-hour-a-day nursing services" provision as requiring a 24/7 on-site nurse was incorrect, CNA continues to apply this unlawful interpretation to Pennsylvania issued policies. CNA knows that its interpretation is incorrect, as a matter of decided law, yet continues to apply it for one purpose: to save money on claims. CNA's decision to engage in this conduct is a decision made in bad faith which harms its elderly Pennsylvania issued policyholders.

32.     By doing so, CNA caused grievous injury and hardship to a most vulnerable population – aged individuals living on fixed incomes, while saving itself millions of dollars in claims.

33.     Defendant has a contractual obligation and legal duty to fairly evaluate and review each claim for benefits submitted by policyholders.

34.     Defendant has systematically, and without a fair evaluation, wrongfully terminated and/or denied claims based on its flawed policy interpretation.

35.     Further, Defendant has a duty to act with good faith and fair dealing in its processing of policyholders' claims.

36.     Defendant's wrongful denial of claims in the above fashion inflicts substantial hardships upon policyholders, including but not limited to the following:  (1) the loss of the coverage benefits to which they are entitled; (2) the payment of monthly premiums (which should have been waived under the policies) for non-existent coverage; (3) economic losses resulting from the denial of coverage including the additional expenses incurred in identifying, moving to, and residing at other facilities; (4) economic losses resulting from the termination of their policy due to the wrongful claim denial; and (5) emotional distress as a result of the wrongful denial of coverage, transfer trauma, and the loss of dignity.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff incorporates by reference all of the preceding allegations.

38.     Upon information and belief, dozens of Pennsylvania policyholders have had their LTCF Benefit claims, and related Waiver of Premium Benefit claims, denied for the same improper reason relied upon by CNA to deny Mr. Snyder's claims. In fact, CNA notes in its denial letters that Mr. Snyder's situation is not unique, "[CNA] must adjudicate all claims in a consistent

manner under the terms of the contract purchased." *See* Exhibit C at 2 (March 3, 2017 Letter from CNA).

39.     Plaintiff seeks certification of the following two classes under F.R.C.P 23(b)(1), (b)(2), and/or (b)(3):

      a.     Class I: All CNA long term care insurance policyholders whose policy was originally delivered in the Commonwealth of Pennsylvania and whose policy contains the following, or substantially similar, language, "has 24-hour-a-day nursing services provided by or under the supervision of a registered nurse (R.N.), licensed vocational nurse (L.V.N.), or licensed practical nurse (L.P.N.)" and who had a claim denied and/or terminated on the basis, in whole or in part, that the facility did not have an R.N., L.V.N. or L.P.N. on-site 24 hours per day, 7 days per week.

      b.     Class II: All CNA long term care insurance policyholders whose policy was originally delivered in the Commonwealth of Pennsylvania and whose policy contains the following, or substantially similar, language, "has 24-hour-a-day nursing services provided by or under the supervision of a registered nurse (R.N.), licensed vocational nurse (L.V.N.), or licensed practical nurse (L.P.N.)[.]"

40.     The Class Members are so numerous that joinder of all members is impracticable.

41.     There are numerous questions of law or fact common to each Class as a whole including, but not limited to, the following:

      a.     Whether a facility must have an R.N., L.V.N., or L.P.N. on site 24-hours-a-day, 7 days a week in order to satisfy the LTCF nursing supervision requirement in the class policies;

      b.     whether an R.N., L.V.N., or L.P.N. can supervise nursing services while not physically on-site at a facility;

      c.     whether Defendant ignored the holding in the *Hoekenga* matter and continued denying claims in the same manner; and

      d.     whether Defendant denied in bad faith claims for facilities that did not have 24 hour-a-day, 7 days a week, R.N., L.V.N., or L.P.N. on-site coverage.

42.     The claims of the Plaintiff are typical of the claims of the Classes.

43.     Plaintiff, through his daughter and power-of-attorney holder Lynne Shue, will fairly and adequately protect the interest of the Classes and has engaged counsel experienced in litigating class actions and experienced in litigating long term care coverage class actions.

44.     The prosecution of separate actions by or against individual members of the Classes will create a risk of inconsistent or varying adjudications with respect to the individual members of the Classes, which could establish incompatible standards of conduct for Defendant.

45.     Defendant has acted and is refusing to act on grounds generally applicable to the Classes as a whole, thereby making final injunctive and declaratory relief with respect to the Classes as a whole appropriate.

46.     Questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.     To that end, (1) upon information and belief, individual Class Members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying experienced counsel to litigate their claims; (2) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this highly vulnerable, frail, ill, and aged population receives the policy benefits for which they paid and to which they are entitled under their policies; and (3) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## **COUNT I**

### **Breach of Contract**

48.     Plaintiff incorporates by reference all of the above paragraphs.

49.     Mr. Snyder purchased the Policy from Defendant in 1993 and timely paid all required premiums.

50.     Defendant formed an agreement and entered into a contract with Plaintiff and the Classes including offer, acceptance, and consideration (hereinafter called the "Contract").

51.     Pursuant to that Contract, Plaintiff and the Classes paid money to Defendant in exchange for Defendant providing a long-term care insurance policy to Plaintiff and the Classes.

52.     Defendant received premiums in exchange for the issuance of a policy of long-term care insurance.

53.     The Contract included, without limitation, Defendant's right to charge a premium in exchange for its promise to pay all claims promptly and justly when all requirements under the policies have been met.

54.     Plaintiff and the Classes performed all of their obligations under the contract, or, in some case Defendants anticipatorily repudiated the contract before these obligations could be performed. Defendant is therefore obligated pursuant to the Contract, without limitation, to pay Plaintiff and the Classes' valid claims.

55.     Defendant is also obligated to honor the Waiver of Premium Benefit in the policies when an insured qualifies for coverage, which Defendant has not.

56.     Defendant breached the Contract by, without limitation, denying claims for stays at facilities that should have been afforded coverage by requiring a non-existent 24/7 on-site licensed nurse requirement, and thereby denying all associated Waiver of Premium Benefit claims as well.

57.     As a direct and proximate result of Defendant's breach of contract, Plaintiff and the Classes have been injured and are entitled to all appropriate injunctive relief and damages.

**COUNT II**

**Violation of 42 Pa. C.S.A. § 8371**

58.     Plaintiff incorporates by reference all of the above paragraphs.

59.     As described throughout this Complaint, Defendant was obligated to follow and comply with the relevant portions of the Policy and to pay the full amount of benefits owed, payable to, and due to Plaintiff and the Classes.

60.     By engrafting non-existent requirements and limitations upon Plaintiff's and the Class Members' claims, namely by requiring an R.N., L.P.N. or L.V.N. to be on-site 24/7 for a facility stay to be covered, even when a district court already told Defendant that this requirement was not supported by the policy language, Defendant acted knowingly, or recklessly disregarded the truth, when it continued denying LTCF Benefit claims, and related Waiver of Premium Benefit claims, in this improper manner, which violates 42 Pa.C.S.A. § 8371.

61.     Defendant did not have a reasonable basis for denying benefits under these policies based on a non-existent 24/7 on-site licensed nurse requirement, and given the outcome in *Hoekenga*, Defendant knew or recklessly disregarded its lack of a reasonable basis in continuing to deny these claims.

62.     Defendant engaged in this conduct (and continues to engage in this conduct) to further its own self-interest, specifically, to save money on claims.

63.     Accordingly, Plaintiff and Class Members are entitled to declaratory judgment and an injunction, as well as to recover damages, interest, attorney's fees, costs, punitive damages and all other amounts permitted under 42 Pa. C.S.A. § 8371.

**Prayer for Relief**

WHEREFORE, Plaintiff, on behalf of himself and the putative Class I and Class II, pray for judgment against CNA as follows:

1. For an Order certifying the proposed Classes under F.R.C.P. 23(b)(1), (b)(2), and/or (b)(3);

2. For the relief outlined in the First and Second Counts as enumerated above;

3. Equitable relief, including declaratory judgment and an injunction, prohibiting CNA from continuing to violate the Class II members' policy language as detailed above;

4. Equitable relief and an Order requiring CNA to reprocess all Class I members' claims without imposing the 24/7 requirement and paying all policy benefits owed plus interest;

5. An award of costs, interest, attorneys' fees and punitive damages available under 42 Pa. C.S.A. § 8371;

6. For such further relief as the Court deems appropriate and proper under any law, statute or equitable decree.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (pro hac to be filed)
GOLDENBERG SCHNEIDER, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Telephone:  513-345-8291
Fax:  513-345-8294
jgoldenberg@gs-legal.com

Sean K. Collins (pro hac to be filed)
LAW OFFICES OF SEAN K. COLLINS
184 High Street, Suite 503
Boston , MA 02110
Telephone: 617-320-8485

Fax: 617-227-2843
sean@neinsurancelaw.com

Ex Kano S. Sams II (pro hac to be filed)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Fax: 310-201-9160
esams@glancylaw.com

Janet E. Pecquet (pro hac to be filed)
BURKE & PECQUET LLC
10260 Alliance Rd., Suite 160
Cincinnati, OH 45242
Telephone: 513-808-4063
Fax: 513-322-4658
janet@b-pelderlaw.com

Mark D. DeBofsky (IL Bar No. 3127892)
DEBOFSKY SHERMAN CASCIARI
REYNOLDS P.C.
150 North Wacker Drive, Suite 1925
Chicago, IL 60606
Telephone: 312-702-1842
Fax: 312-929-0309
mdebofsky@debofsky.com

Counsel for Plaintiff and the Classes